

# THE ATTORNEY GENERAL
## OF TEXAS

October 24, 1986

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable O. H. "Ike" Harris          Opinion No. JM-570
Chairman
Economic Development Committee        Re: Investment of municipal
Texas State Senate                    funds in money market mutual
P. O. Box 12068, Capitol Station      funds
Austin, Texas    78711

Dear Senator Harris:

Your letter requesting the opinion of this office reads:

> Pursuant to various statutes, cities in Texas are authorized to invest certain of their municipal funds in obligations or securities of the United States. See, e.g., articles 1182-g, 1269j-3, and 2561, V.T.C.S. The city of Arlington has concluded, after due research and consideration, that the investment of funds in government securities through the vehicle of a money market mutual fund (MMMF) would be most desirable. Your opinion is requested as to whether the statutes cited above authorize the investment by the city of its funds in a MMMF which is regulated by the federal government and which deals solely in obligations of the United States.
>
> The type of MMMF or 'open-end investment company' which would be eligible for this type of investment is specifically designed for use by banks, fiduciaries and custodians of public funds. The MMMF would invest only in short-term United States Treasury obligations which mature in less than one year. An investor such as the city would own an individed pro rata interest in the portfolio of short-term obligations owned by the fund. This type of mutual fund is registered with the Securities and Exchange Commission (SEC) under the Investment Company Act of 1940 and their shares are registered under the Securities Act of 1933. A fund for U.S. Treasury obligations would invest only in instruments issued by the United States government or its agencies. The securities purchased by the fund must be held by a qualified

bank or other institution acting as custodian of the government securities which are in fully negotiable form without restrictions, are inspected periodically by independent public accountants and are subject to inspection by the SEC. All employees of the fund having access to the securities must be bonded. The SEC can and does inspect the books and records and regulate the accounting policies and principals of the fund and all financia. statements of the fund must be prepared by independent public accountants.

The ownership of government obligations through the vehicle of an MMMF as opposed to ownership of individual securities is advantageous to the city in several respects. It first provides the city with a more efficient cash management tool than does traditional ownership of individual securities. Because ownership through a fund allows both the investment and withdrawal of funds without the purchase or sale of the underlying governmental securities, the city enjoys a liquidity of its investment which enables it to better manage its financial affairs and earn an appropriate rate of return. In addition, the use of a fund for investment in governmental obligations represents a reduction in the risk inherent in any investmen: and, very importantly, reduces the cost to the city for its investment transaction. In short, it would appear that investment in an MMMF offers all of the security of ownership of individual securities but further provides other advantages not available through individual ownership. (Emphasis added).

The city of Arlington is a home rule city; it may incorporate in its charter and enact by ordinance any provision that is not inconsistent with the general laws of the state or with the constitution. Tex. Const. art. XI, §5; V.T.C.S. art. 1165. See 40 Tex. Jur. 2d Municipal Corporations §326 (1976). But such cities are precluded from entering a field of legislation occupied by general legislative enactments. Prescott v. City of Borger, 158 S.W.2d 578 (Tex. Civ. App. - Amarillo 1942, writ ref'd). See also City of Baytown v. Angel, 469 S.W.2d 923 (Tex. Civ. App. - Houston [14th Dist.] 1971, writ ref'd n.r.e.).

Of the three statutes mentioned by your letter, article 1182g, V.T.C.S., is applicable only to home rule cities having a population of 900,000 or more according to the most recent federal census, a category that does not include the city of Arlington. Article 2561,

V.T.C.S., applicable to home rule cities as well as others, states in subsection (b):

> (b)  Unless  expressly  prohibited  by  law  or unless it is in contravention of any depository contract between a city, town, or village and any depository bank, the governing body of a city, town, or village may direct the treasurer of the entity to:
>
> (1)  withdraw  any  amount  of  funds  of  the entity that are deposited in a depository and that  are  not  required  immediately  to  pay obligations of the entity or requried to be kept on deposit under the terms of the depository contract; and
>
> (2)  invest  those  funds  in  direct  debt securities  of  the  United  States.  (Emphasis added).

Article 1269j-3, V.T.C.S., applies to "all political subdivisions," which include home rule cities.  It reads:

> All  political  subdivisions  of  the  State  of Texas  which  have  balances  remaining  in  their accounts at the end of any fiscal year may invest such balances in Defense Bonds or other obligations of the United States of America; provided, however,  that  when  such  funds  are  needed  the obligations of the United States in which such balances  are  invested  shall  be  sold  or  redeemed and  the  proceeds  of  said  obligations  shall  be deposited in the accounts from which they were originally drawn.  (Emphasis added).

The Texas Legislature has by these statutory provisions enacted general legislation controlling the type of securities in which the funds of home rule cities may be invested.  The investment practices of the city of Arlington, to be legally authorized, must be consistent therewith.  Prescott v. City of Borger, supra.  Cf. V.T.C.S. art. 2549(c) (county investment authority); V.T.C.S. art. 4413(34c) (rules governing local funds); V.T.C.S. art. 2525, §4(a)(4) (state investment authority).[1]

---

1.  Contemporary amendments to article 2525, V.T.C.S., were saved from repeal by section 2 cf Acts 1985, 69th Leg., ch. 240, at 1204, enacting the Treasury Act.  See Acts 1985, 69th Leg., ch. 71, at 488.

A "money-market fund" can be generally described as a mutual fund which typically invests in short-term debt instruments such as government securities, commercial paper, and large denomination certificates of deposit of banks. A "mutual fund" is a type of investment company which continuously offers shares to the public and stands ready to buy back shares whenever an investor wishes to sell. See Handbook, U.S. Securities and Exchange Commission, What Every Investor Should Know at 29 (1986). As your letter notes, a mutual fund is an "open-end investment company":

> An open-end investment company -- usually known as a mutual fund -- is a company with a managed portfolio of securities that will buy back shares from investors whenever the investor wishes to sell. The redemption price depends upon the value of the company's portfolio at that time (the 'net asset value'). There is no secondary trading market for the shares of such companies.

> When the selling price of the shares of an open-end company includes a sales charge, the company is known as a load fund. Shares of such companies may be purchased through broker/dealers who receive part of the sales charge. An open-end investment company is known as a no-load fund if the selling price of its shares does not contain a sales charge. Shares of such a fund usually may be purchased directly from the investment company or its underwriter. Broker/dealers who sell shares of such a company may charge only a nominal fee for their services.

Id. at 22. See Board of Governors of the Federal Reserve System v. Investment Company Institute, 450 U.S. 46, 51 (1981).

While it may be true as an abstract matter that an investor in such a fund owns an undivided pro rata interest in the portfolio of short-term obligations owned by the fund, it is true only in the same sense that an investor in the stock of a manufacturing concern can be said to own an undivided pro rata interest in the machinery, buildings, and other assets of the manufacturer. The investor can exercise no personal control over the portfolio of the fund or its disposition, and has no right to reduce to possession any part of it for safekeeping or for any other purpose.

As Professor Frankel says in 1 Frankel, The Regulation of Money Managers, A §2 at 5 (1978):

> Investment companies are designed to offer small investors expert management and diversification by pooling small investments and entrusting

> them to one manager. Investment companies are
> sponsored and promoted by members of the
> securities and investment industries, not by the
> small investors. . . .
>
> . . . .
>
> The small investor benefits from management,
> diversification, and economies of scale. On the
> debit side, he has no control or very little
> control over his investment, and he has little
> means of judging the value of the services which
> he receives.

The suggestion that the use of such a fund for investment in government obligations represents a reduction in the risk inherent in any investment is subject to question. The investor in such a fund assumes risks as to the fidelity, accountability and expertise of the fund managers as well as the financial stability and responsibility of the entities whose obligations are represented in the portfolio of the fund. But that is not the issue. We cannot base our answer on anticipated advantages of such an investment. Instead, we must determine whether ownership interests in such a fund constitute "direct debt securities of the United States" within the meaning of article 2561(b), V.T.C.S., or "obligations of the United States of America" within the meaning of article 1269j-3, V.T.C.S.

A "government security" is defined by the Investment Company Act of 1940 to be

> any security issued or guaranteed as to principal
> or interest by the United States, or by a person
> controlled or supervised by and acting as an
> instrumentality of the Government of the United
> States pursuant to authority granted by the
> Congress of the United States; or any certificate
> of deposit for any of the foregoing.

15 U.S.C. §80a-2(a)(16). It is noteworthy that under the Texas Securities Act, article 581-1, et. seq., V.T.C.S., a direct sale of government securities to a purchaser is an exempt transaction, but the sale of an interest in a mutual fund dealing in such government securities is not. See V.T.C.S. art. 581-5, subsec. M.

In Bankers Farm Mortgage Company v. United States, 69 F.Supp. 197 (U.S. Ct. Cl. 1947), cert. denied, 331 U.S. 831 (1947), a case which arose before the Investment Act of 1940 was enacted, it was contended that bonds issued by the Bankers Joint Stock Land Bank of Milwaukee were obligations of the United States because the bank was organized and existed under a federal charter pursuant to an act of Congress which declared such bonds "instrumentalities of the United States

Government" and exempt from taxation.  The plaintiff was a corporation formed to buy up the bank's outstanding bonds after the bank had defaulted on their payment and had become insolvent.

The Bankers Farm Mortgage Company court observed that the bank, which loaned money to farmers for profit, was organized for private gain and that all its capital was furnished by private investors.  The Court held the bonds not to be obligations of the United States, saying:

> Neither the statute nor the bonds contain any express promise by defendant [the United States] to pay the bonds, or to become liable for any other obligation or debt of the bank, and we think no such obligation can be inferred or implied in the circumstances.

69 F. Supp. at 202.

Open-end money market investment companies (mutual funds) are organized for private gain with capital provided by private investors, and the United States has made no express or implied promise to be liable, or to become liable, for the obligations of such companies notwithstanding that the companies themselves may invest in government securities and are subject to federal regulatory control.  See 15 U.S.C. §80a-1 et seq. (the Investment Company Act of 1940).  The investment of funds in obligations or shares of such companies (which companies are not chartered by Congress or made tax exempt and are not by Congress made instrumentalities of the government) is not an investment of funds in obligations of the United States of America within the meaning of article 1269j-3, V.T.C.S., nor an investment in direct debt securities of the United States within the meaning of article 2561(b)(2), V.T.C.S.

A similar question was considered by this office in Attorney General Opinion JM-23 (1983).  There, a statute (since amended) authorized counties to invest idle funds only in "direct debt securities of the United States."  See V.T.C.S. art. 2549(c).  The question was whether Dallas County might utilize "repurchase agreements" involving securities of the United States for short term investments, i.e., whether an investment in such repurchase agreements was an investment in "direct debt securities of the United States."

The opinion concluded that an investment in such repurchase agreements was not the statutory equivalent of investing in direct debt securities of the United States.  We reach an analagous conclusion here.  Cf. Attorney General Opinions MW-343 (1981); MW-224 (1980).  In our opinion, the existing statutes of this state do not authorize the city of Arlington to invest its funds in a money market mutual fund regulated by the federal government, even though the fund deals solely in obligations of the United States.

As a matter of interest, two proposals to expressly authorize the investment of public funds in money market mutual funds were defeated by the Sixty-ninth Legislature in 1985. See S.B. No. 766, 69th Leg. (1985); H.B. No. 2078, 69th Leg. (1985).

## S U M M A R Y

The existing statutes of this state do not authorize the city of Arlington to invest its funds in a money market mutual fund dealing solely in obligations of the United States.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General